UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-60075-STRAUSS

**HOLLEY DEATON,**

      Plaintiff,
v.

**MARTIN J. O'MALLEY,**
Commissioner of Social Security,

      Defendant.
_____/

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment/Initial Brief ("Plaintiff's Motion") [DE 12] and Defendant's Cross-Motion for Summary Judgment ("Defendant's Motion") [DE 15]. I have reviewed both motions, Plaintiff's Reply Brief [DE 17], the administrative record [DE 6], and all other filings in this case. For the reasons discussed herein, Plaintiff's Motion [DE 12] will be **DENIED** and Defendant's Motion [DE 15] will be **GRANTED**.

**I.  BACKGROUND & PROCEDURAL HISTORY**

On June 1, 2021, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Tr. 11, 72, 73, 88, 98, 201-10. In her applications, she alleged a disability onset date of January 1, 2021 ("Alleged Onset Date" or "AOD"). *Id.* Plaintiff, who was born in 1971, was 49 years old on the AOD. Her DIB and SSI claims were denied initially and upon reconsideration. Tr. 11, 72-107. Thereafter, Plaintiff appeared with counsel at a telephonic hearing before an Administrative Law Judge ("ALJ") on June 5, 2023; a vocational expert ("VE") also appeared and testified at the hearing. Tr. 35-71. On August 10, 2023, the ALJ

issued her decision, finding that Plaintiff was not disabled under the Social Security Act (from the AOD through the date of the ALJ's decision). Tr. 11-25. On November 28, 2023, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-4. Consequently, on January 11, 2024, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.  DISCUSSION

### A.  THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If

so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

### B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled between the AOD and the date of the ALJ's decision. *See* Tr. 11-25. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 11-14. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. Tr. 14.

At step two, the ALJ found that Plaintiff had the severe impairments of depressive disorder and anxiety disorder. Tr. 14. Next, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17. The ALJ specifically found that Plaintiff's mental impairments, considered both individually and in combination, did not meet or medically equal Listings 12.04 and 12.06. Tr. 17. In so finding, the ALJ noted that she considered the paragraph B criteria (the four broad areas of mental functioning). Tr. 17. The ALJ assessed a "mild" limitation in two areas (understanding, remembering, or applying information & adapting or managing oneself) and a "moderate" limitation in the other two areas (interacting with others & concentrating, persisting, or maintaining pace). Tr. 17-18. Additionally, in finding that Plaintiff did not meet or equal Listings 12.04 and 12.06, the ALJ found that the evidence failed to establish the presence of the paragraph C criteria.[1] Tr. 18.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can do simple, routine, rote or repetitive tasks, but must avoid work that is strictly timed or has strict production requirements. [Plaintiff] must avoid work that is on an assembly line or working with a machine

---

[1] The paragraph C criteria is discussed in further detail in section 1 of the Analysis below.

5

   that dictates timing and pace like a conveyor belt. [Plaintiff] can interact with supervisors, coworkers, and general public occasionally. [Plaintiff] must avoid workplace hazards, such as unprotected heights, moving mech parts, and operating heavy machinery. [Plaintiff] can occasionally operate a motor vehicle.

Tr. 18. After assessing Plaintiff's RFC, the ALJ found – based on Plaintiff's RFC – that Plaintiff is unable to perform her past relevant work. Tr. 23-24.

  Therefore, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine whether a significant number of jobs, that Plaintiff could perform, exist in the national economy. Tr. 24-25. Relying on the VE's testimony, the ALJ determined that Plaintiff is able to perform the requirements of unskilled jobs such as warehouse checker, labeler, and inspector and packer. Tr. 24-25. As a result, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work existing in significant numbers in the national economy. Tr. 25. In light of this conclusion, the ALJ found that Plaintiff was not disabled. Tr. 25.

  **C. ANALYSIS**

  In her motion, Plaintiff raises two arguments. First, Plaintiff contends that the ALJ erred at step three by making an incorrect and conclusory finding regarding the paragraph C criteria. Second, Plaintiff contends that the ALJ erred by not appropriately accounting for certain limitations assessed by the state agency psychological consultants when the ALJ formulated Plaintiff's RFC. As discussed herein, neither argument establishes a basis for reversal.

  **1. Alleged Step Three Error**

  The ALJ's step three determination is due to be affirmed. At step three, "the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the severity of a specified impairment in the Listing of Impairments." *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). "[A] claimant is conclusively presumed to be

6

disabled if she meets or equals the level of severity of a listed impairment, or Listing." *Garcia v. Comm'r of Soc. Sec.*, 833 F. App'x 303, 307 (11th Cir. 2020) (citing *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). "The Listing of Impairments . . . describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Listings for mental disorders are contained in Section 12.00. *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 923 (11th Cir. 2015). Two of the Listings included therein are 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). These two Listings "have three paragraphs, designated A, B, and C; [a claimant's] mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2).

Listings 12.04 and 12.06 contain the identical paragraph B and paragraph C criteria (only their paragraph A criteria differ). *See id.* §§ 12.00(A)(2), 12.04, 12.06. "To satisfy the paragraph B criteria, [a] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* § 12.00(A)(2)(b). The four areas of mental functioning (the paragraph B criteria) are: "[1] Understand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." *Id.* "To satisfy the paragraph C criteria, [a] mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." *Id.* § 12.00(A)(2)(c). "The criterion in C1 is satisfied when the evidence shows that [a claimant relies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly

structured setting(s), to diminish the symptoms and signs of [the claimant's] mental disorder." *Id.* § 12.00(G)(2)(b). "The criterion in C2 is satisfied when the evidence shows that, despite [a claimant's] diminished symptoms and signs, [the claimant] ha[s] achieved only marginal adjustment." *Id.* § 12.00(G)(2)(c). "'Marginal adjustment' means that [a claimant's] adaptation to the requirements of daily life is fragile; that is, [the claimant] ha[s] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life." *Id.*[2]

It is a claimant's burden to prove that her impairment meets or equals a listed impairment. *Bellew*, 605 F. App'x at 920 (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). "To meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); *see also Bellew*, 605 F. App'x at 920 ("An impairment—no matter how severe—that meets only some of the Listing requirements does not qualify."). An impairment "cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, [a claimant]

---

[2] In full, section 12.00(G)(2)(c) provides as follows:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

8

must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d); *see also Bellew*, 605 F. App'x at 922; *Himes*, 585 F. App'x at 762.

Here, the ALJ concluded at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17. In her motion, Plaintiff argues that the ALJ erred in finding that Plaintiff's impairments do not meet Listings 12.04 and 12.06.[3] As indicated above, for Plaintiff to meet these Listings, she must satisfy (1) the requirements of paragraph A (which are different for the two Listings), and (2) the requirements of paragraph B or paragraph C (which are the same for the two Listings). More specifically, Plaintiff must demonstrate that the ALJ erred in finding that Plaintiff's impairments did not meet the Listings.

Regarding paragraph A of the Listings, Plaintiff notes that the ALJ did not explicitly address whether the paragraph A criteria were (or were not) met. However, Plaintiff contends that the ALJ implicitly conceded that the paragraph A criteria were met for the two Listings at issue. Defendant agrees. Therefore, for Plaintiff to meet the Listings, she must only establish that the requirements of paragraph B or paragraph C were satisfied (or rather, that the ALJ erred in finding that the requirements of at least one of the two paragraphs were not satisfied).

Regarding the paragraph B criteria, Plaintiff states in her motion that "[f]or purposes of this legal argument, the Plaintiff does not dispute whether substantial evidence supports the ALJ's finding pertaining to the paragraph B criteria." [DE 12] at 5. In other words, Plaintiff is not contesting (for purposes of this proceeding) the ALJ's finding that the paragraph B criteria were not satisfied. Thus, the resolution of whether the ALJ erred in finding that Plaintiff's impairments did not meet a listing turns on whether the ALJ erred in her paragraph C determination.

---

[3] Plaintiff does not make a separate medical equivalency argument.

9

In addressing paragraph C, the ALJ stated: "The undersigned has also considered whether the 'paragraph C' criteria are satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." Tr. 18. In her motion, Plaintiff argues that the ALJ's finding regarding the paragraph C criteria is conclusory and, therefore, inhibits meaningful review. Regardless, Plaintiff contends that the ALJ's paragraph C determination is not supported by substantial evidence, and Plaintiff discusses relevant evidence to attempt to show why the ALJ erred in concluding that the paragraph C criteria were not satisfied. Based on Defendant's response to Plaintiff's Motion, the dispute here seems to turn on the issue of "marginal adjustment" (the paragraph C2 criteria).[4]

As an initial matter, the mere fact that the ALJ's finding regarding the paragraph C criteria is conclusory does not merit reversal.[5] What matters is whether the ALJ's determination is supported by substantial evidence. In fact, the Eleventh Circuit has explained:

> While Appendix 1 must be considered in making a disability determination, it is not required that the [ALJ] mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing. We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments. . . . The proper standard in reviewing the [ALJ's] findings of fact is whether there is substantial evidence to support those findings and inferences.

*Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (internal citation omitted); *see also Flemming*, 635 F. App'x at 676. At any rate, the ALJ in this case explicitly found that Plaintiff did not meet or equal Listings 12.04 and 12.06. Tr. 17. And given that an ALJ does not

---

[4] Defendant does not appear to contest Plaintiff's contention that her impairments met the other requirements of paragraph C – "a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in" C1. § 12.00(A)(2)(c).

[5] I recognize that Plaintiff cites some district court cases potentially to the contrary. However, having reviewed those cases (and other applicable law), I find that some are distinguishable, and others are unpersuasive (to the extent they are not distinguishable).

10

automatically err when she does not make an explicit finding regarding certain listings, the alleged step three error in this case – a conclusory paragraph C finding – does not automatically warrant reversal. *Cf. Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 842 & n.5 (11th Cir. 2019) (recognizing that while it would be helpful if ALJs tied their findings to particular listings at issue, precedent does not require more explicit step three findings).

To determine whether reversal is warranted, the Court must examine the ALJ's decision as a whole to see whether it contains substantial evidence to support the ALJ's paragraph C determination. In fact, the Eleventh Circuit has recently made clear (in line with other circuit courts) that "it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024) (citations omitted).[6] Plaintiff, however, contends in her reply that by inviting the Court to read the ALJ's decision as a whole, Defendant is essentially asking the Court to engage in improper post-hoc rationalization given that the ALJ did not provide a rationale for her paragraph C determination in the first place. Not so. Reading the ALJ's decision as a whole is something that the Court must do under binding Eleventh Circuit precedent. Improper post-hoc rationalization, on the other hand, would occur if the Court were to affirm based on some rationale of the Commissioner that is not contained in the ALJ's decision. But pointing to a rationale in the ALJ's decision, even if in a different part of her decision, is not improper post hoc rationalization.

---

[6] *See also Connors v. Colvin*, 656 F. App'x 808, 810 (9th Cir. 2016) ("The ALJ's step-three finding that Connors did not meet or equal Listing 14.09 for rheumatoid arthritis is procedurally and substantively sound. The ALJ did not include a discussion of the relevant rheumatoid arthritis evidence in the section of his opinion dedicated to the listing analysis, but he did include a discussion of the relevant evidence later in his opinion. Therefore, his analysis was procedurally proper.").

Here, a review of the ALJ's decision as a whole demonstrates that the ALJ's paragraph C determination is supported by substantial evidence. More specifically, the ALJ's decision demonstrates precisely why the ALJ concluded that Plaintiff did not satisfy the paragraph C2 criteria of "marginal adjustment." Significant in this regard is the ALJ's finding (at steps two and three) that Plaintiff only has a "mild" limitation in the area of adapting or managing oneself (the fourth of the paragraph B criteria), *see* Tr. 18, a finding Plaintiff makes clear she does not challenge. *See* [DE 12] at 5 ("For purposes of this legal argument, the Plaintiff does not dispute whether substantial evidence supports the ALJ's finding pertaining to the paragraph B criteria.").

Plaintiff's failure to challenge the ALJ's assessment of a "mild" limitation in the area of "adapting or managing oneself" dooms Plaintiff's "marginal adjustment" (paragraph C2) challenge. Although the paragraph B and paragraph C criteria are obviously separate, the ALJ's finding that Plaintiff only has a "mild" limitation in the area of adapting or managing oneself offers clear support for the ALJ's finding regarding marginal adjustment. By assessing a "mild" limitation, the ALJ found that Plaintiff's functioning in the area of adapting or managing oneself "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b). But as noted above, to find "marginal adjustment," the ALJ would have had to conclude that Plaintiff has "*minimal capacity* to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." § 12.00(G)(2)(c) (emphasis added). By explicitly finding that Plaintiff is only "slightly limited" in the area of adapting or managing oneself, the ALJ obviously found that Plaintiff has more than "minimal capacity" to adapt to changes and demands that are not already part of her daily life. Thus, Plaintiff's failure to challenge the ALJ's assessment of a "mild" limitation in the area of adapting or managing oneself is fatal to Plaintiff's "marginal adjustment" argument. *Cf. Swinsinski v.*

*O'Malley*, No. 8:23-CV-756-SPF, 2024 WL 1231318, at *6 (M.D. Fla. Mar. 22, 2024) ("[L]ogic dictates that having found that Plaintiff has only a mild limitation in adapting or managing herself, the ALJ also implicitly found that Plaintiff did not have a 'marginal adjustment.'" (quoting *Gardner v. Comm'r of Soc. Sec.*, No. 2:20-CV-331-MRM, 2021 WL 3674305, at *6 (M.D. Fla. Aug. 19, 2021)); *see also Himes*, 585 F. App'x at 764 (addressing a prior version of the paragraph C criteria for Listing 12.04 and finding, "medical opinions and evidence indicating that [a claimant] had mild or moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace support[ed] the ALJ's conclusion that a minimal increase in mental demands or a change in the environment would not predictably cause [the claimant] to decompensate").

But even aside from Plaintiff's failure to challenge the ALJ's findings regarding the paragraph B criteria, the ALJ's decision and her findings regarding Plaintiff's ability to adapt are supported by substantial evidence. For starters, the ALJ explained how Plaintiff's mental status examinations were largely intact. *See* Tr. 20-23. While that is by no means substantial evidence on its own, the ALJ also explained that Plaintiff "had good activities of daily living. She was able to follow written directions very well, was able to see to personal care, shop, play cards, care for her grandson several times a week, perform limited chores, and was able to prepare simple meals." Tr. 22; *see also* Tr. 17-18, 23. Plaintiff is also the caretaker for her mother, who has dementia. Tr. 18, 22, 23. Additionally, the ALJ found that medication helped improve Plaintiff's symptoms and that Plaintiff's treatment was largely conservative. Tr. 22 Overall, the ALJ's decision contains substantial evidence to support her finding that Plaintiff only has a mild limitation in the area of adapting and managing oneself. And for the reasons discussed above, a finding of marginal adjustment would be contrary to the ALJ's finding that Plaintiff only has a mild limitation in

13

adapting or managing oneself. Thus, the ALJ's finding that the evidence failed to establish all of the paragraph C criteria is supported by substantial evidence.

Nevertheless, Plaintiff argues that "the substantial evidence of record clearly shows that [her] chronic mental conditions of depression disorder and anxiety disorder cause her to have a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life." [DE 12] at 11. But in making this argument, Plaintiff only relies on her subjective complaints – both in her hearing testimony and in a function report that she completed. *See id.* at 11-13 & nn. 33-48. Now, I agree with Plaintiff that her subjective complaints, if accepted, would be strong evidence of "marginal adjustment." However, the ALJ explicitly discussed Plaintiff's subjective complaints at length and decided to discount them, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 19-20. Significantly, Plaintiff has not argued that the ALJ erred in making that credibility determination,[7] and this Court is not permitted to reweigh the evidence. Moreover, while Plaintiff is correct that substantial evidence exists to support a finding of "marginal adjustment" (i.e., that the ALJ *could* have found marginal adjustment), Plaintiff has not shown that substantial evidence does not exist to support the ALJ's contrary finding (and as discussed in the preceding paragraph, substantial evidence does support the ALJ's finding). And importantly, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

---

[7] Of course, "credibility determinations are the province of the ALJ, and [courts] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citations omitted).

For the foregoing reasons, reversal is not warranted based on Plaintiff's contention that the ALJ erred at step three.

### 2. Limitations Assessed by State Agency Psychological Consultants

Plaintiff contends that the ALJ erred by failing to incorporate into Plaintiff's RFC outcome-determinative limitations assessed by two state agency psychological consultants. According to Plaintiff, this was error because the ALJ provided no explanation for not incorporating the limitations even though she found the consultants' opinions to be persuasive.

In summarizing the consultants' findings, the ALJ explained that the consultants

> noted that while [Plaintiff] may have limitations with understanding and remembering detailed instructions, she could prepare meals. [They] added that although [Plaintiff] may have difficulty carrying out detailed instructions and maintaining concentration for extended periods of time, she could complete household chores. The consultant[s] determined [Plaintiff] had the ability to interact with the general public, but may struggle to accept instructions and respond appropriately to criticism from supervisors. In sum, [they] opined [Plaintiff] was capable of simple routine tasks.

Tr. 22. The ALJ then explained that she found the consultants' opinions to be "persuasive as they were consistent with, and supported by, the medical evidence [of] record." Tr. 22. According to the ALJ, treatment notes largely reflected that treatment and medication helped improve Plaintiff's symptoms, and mental status examinations were generally intact. Tr. 22-23. Additionally, the ALJ explained that Plaintiff "had good activities of daily living. She was able to care for others, such as being caretaker to her mother who had dementia, and babysitting her grandson several times a week. [Plaintiff] was able to perform some household chores, see to personal care, prepare simple meals, and follow directions." Tr. 23 (internal citations omitted).

Ultimately, the ALJ concluded that the foregoing evidence demonstrated Plaintiff could perform simple routine tasks. Tr. 23.[8] However, the ALJ stated that she included limitations in Plaintiff's RFC for production requirements/timed work due to Plaintiff's anxiety disorder and symptoms. The ALJ also explained that she included social limitations, taking into account Plaintiff's reported social issues and "reluctance to engage socially" on the one hand, but on the other hand, the fact that Plaintiff "remained able to interact and behave appropriately with others . . . to undergo treatment, be examined by unfamiliar consultative examiners, and shop." Tr. 23. Additionally, the ALJ included restrictions for workplace hazards in Plaintiff's RFC based, at least in part, on Plaintiff's mental health symptoms. Tr. 23.

Nevertheless, Plaintiff contends that the ALJ was required to include (in Plaintiff's RFC), or alternatively explain why she did not include, the state agency psychological consultants' findings that Plaintiff: (1) "may have limitations with understanding and remembering detailed instructions" and "may have difficulty carrying out detailed instructions"; (2) may have difficulty "maintain[ing] concentration for extended periods of time"; and (3) "has the ability to interact with the general public, but may struggle to accept instructions and respond appropriately to criticism from supervisors." Tr. 79, 86, 96, 106.

To evaluate Plaintiff's argument, a few points are important. First, the regulations governing the consideration of medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017 (like the claim in this case) make clear that an ALJ is not required to articulate how she "considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). In

---

[8] The consultants likewise found that Plaintiff "appears capable of SRT's [sic]." Tr. 77, 79, 84, 86, 92, 96, 102, 106.

other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding.  §§ 404.1520c(b)(1), 416.920c(b)(1).  Second, even when an ALJ finds that a medical source's medical opinions or prior administrative medical findings are persuasive, the ALJ is not required to include in a claimant's RFC every precise limitation assessed by the medical source.[9]  Third, "Social Security Ruling 96-8p (SSR 96-8p) provides that the ALJ must explain and address *any conflicts* between the RFC and medical opinions."  *Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, at *2 (11th Cir. Nov. 20, 2023) (emphasis added); *see also Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024) ("An ALJ need not incorporate every limitation from a medical source's recommendation, even if it finds that medical source to be persuasive. However, under Social Security Ruling 96-8p, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the

---

[9] *See McCravy v. Kijakazi*, No. 22-2832-CV, 2023 WL 7130345, at *1 (2d Cir. Oct. 30, 2023) ("The ALJ's RFC need not 'perfectly match' any one medical opinion." (citing *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022))); *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) ("The ALJ was not required to adopt the exact limitations set forth in the opinions she found persuasive."); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *League v. Comm'r of Soc. Sec.*, No. 2:20-CV-650-SPC-NPM, 2022 WL 1085540, at *6 (M.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 703011 (M.D. Fla. Mar. 9, 2022) ("[T]he regulations do not require an ALJ to adopt into the RFC every part of an opinion that he otherwise finds persuasive."); *Bullard v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-289-T-23MCR, 2020 WL 3668792, at *6 n.10 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 3640477 (M.D. Fla. July 6, 2020) ("[T]he ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the final responsibility for assessing the RFC rests with the ALJ." (citations omitted)); *Young v. Kijakazi*, No. 8:20-CV-1622-SPF, 2022 WL 594271, at *5 (M.D. Fla. Feb. 28, 2022); *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of Dr. Cleary's limitations into the RFC.").

opinion was not adopted.'" (internal citation omitted)). Thus, the ALJ only needed to explain why she did not adopt the three findings to which Plaintiff points *to the extent that those findings conflict with the ALJ's RFC assessment*.

However, the three findings Plaintiff brings up do not conflict with the ALJ's RFC assessment. As noted above, the first finding that Plaintiff says conflicts with the RFC is the consultants' finding that Plaintiff "may have limitations with understanding and remembering detailed instructions" and "difficulty carrying out detailed instructions." But the consultants did not say that Plaintiff cannot understand, remember, or carry out detailed instructions – only that she *may* have limitations or difficulty with doing so. Importantly, the consultants' statement regarding detailed instructions followed their mental RFC assessment, which provides further context. In that assessment, the consultants found that Plaintiff is "moderately limited" in her ability "to understand and remember detailed instructions" and "carry out detailed instructions." Tr. 78, 85, 95, 105. In other words, by finding a "moderate" limitation, the consultants found that Plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c). That certainly does not equate to an inability to understand, remember, or carry out detailed instructions. And significantly, even though the ALJ was "under no obligation" to "discuss every portion of the State agency consultants' opinions," *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 873 (11th Cir. 2020), the ALJ did specifically mention the consultants' finding that Plaintiff "may have limitations with understanding and remembering detailed instructions." Tr. 22. Moreover, the ALJ makes clear that she did include various limitations in Plaintiff's RFC to account for Plaintiff's mental impairments. *See* Tr. 23. At any rate, the ALJ's RFC assessment, even if not completely *identical*

18

to the consultants' findings, does not *conflict* with the consultants' findings, and Plaintiff has not argued that the ALJ's RFC assessment is not otherwise supported by substantial evidence.

Plaintiff's argument regarding the other two findings that Plaintiff contends the ALJ should have adopted, or alternatively explained why she did not adopt, fails for similar reasons. As noted above, those two findings (of the consultants) are that Plaintiff *may* have difficulty "maintain[ing] concentration for extended periods of time" and "*may* struggle to accept instructions and respond appropriately to criticism from supervisors." Tr. 79, 86, 96, 106. Once again, though, both consultants only assessed "moderate" limitations in Plaintiff's abilities to "maintain attention and concentration for extended periods" and "accept instructions and respond appropriately to criticism from supervisors." Tr. 78, 85, 95, 105. Thus, they found that Plaintiff's "functioning in th[ese] area[s] independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(c). The ALJ's RFC assessment does not *conflict* with the consultants' findings, and again, Plaintiff has not argued that the ALJ's RFC assessment is not otherwise supported by substantial evidence.[10]

One last point. Plaintiff heavily relies on *Weidlich*, where the Eleventh Circuit found that "[t]he ALJ's RFC assessment conflict[ed] with [a] medical opinion, and [that] the absence of a clear explanation violate[d] SSR 96-8p and constitutes reversible error." 2023 WL 8015753, at *2. *Weidlich* does indeed present a good example of what constitutes a "conflict" between an ALJ's RFC assessment and a medical opinion. In *Weidlich*, the ALJ found a medical opinion to

---

[10] It is also worth noting that – although an ALJ's RFC assessment must be more detailed than the ALJ's paragraph B assessment (which was clearly the case here) – the ALJ's assessment of the paragraph B criteria was the same as that of the state agency psychological consultants. They all assessed mild limitations in two areas (understanding, remembering, or applying information & adapting or managing oneself) and moderate limitations in the other two areas (interacting with others & concentrating, persisting, or maintaining pace). Tr. 17-18, 76, 83, 91, 101.

be generally persuasive. *Id.* But "despite agreeing" with the opinion that the claimant "could never lift more than 10 pounds," the ALJ found that the claimant "could perform 'light work,' which involves lifting up to twenty pounds." *Id.* It goes without saying that finding an individual can lift up to 20 pounds conflicts with finding that the individual can only lift up to 10 pounds. For the reasons explained above, no such conflict exists in this case.

Ultimately, the ALJ clearly took into account the medical evidence regarding Plaintiff's mental health and assessed specific limitations based on Plaintiff's mental health conditions. Because the ALJ considered all of the relevant evidence, because Plaintiff has not shown that the ALJ's RFC determination is not supported by substantial evidence, and because the ALJ's RFC determination does not conflict with the consultants' findings, the ALJ did not err.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 12] is **DENIED** and Defendant's Motion [DE 15] is **GRANTED**. The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 28th day of August 2024.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge